# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

|  |  |
|---|---|
| STATE OF MONTANA, et al., | **CV-24-180-BMM** |
| Petitioner, | |
| v. | |
| DOUG BURGUM, in his official capacity as Secretary of the United States Department of the Interior, et al., | **ORDER ON CROSSCLAIM** |
| Defendants. | |

Doug Burgum, in his official capacity as U.S. Secretary of the Interior; the U.S. Department of the Interior; Jessica Bowron, in her official capacity to exercise the authority of the National Park Service Director; the National Park Service; and Cam Sholly, in his official capacity as Superintendent of Yellowstone National Park (collectively, "Federal Defendants"), move to dismiss the cross-claim filed by Intervenor Cottonwood Environmental Law Center ("Cottonwood") for insufficient service of process, failure to timely serve, and failure to prosecute. (Doc. 102.) Cottonwood opposes the motion. (Doc. 104.) The Court denies, in part, and grants, in part, the motion.

1

**BACKGROUND**

The State of Montana ("Montana") filed suit against Federal Defendants in 2024, challenging the Interagency Bison Management Plan ("IBMP"). (Doc. 1.) Montana alleges claims under the National Environmental Policy Act ("NEPA"), the National Park Service Organic Act, and the Yellowstone National Park Protection Act. (*Id*.) Cottonwood moved to intervene as a defendant on February 18, 2025. (Doc. 13.)

Cottonwood filed an answer to Montana's complaint. (Doc. 15.) In its answer, Cottonwood also asserted a crossclaim against Federal Defendants, that challenged National Park Service's NEPA analysis. (*Id*. at 12.) Cottonwood specifically alleges that National Park Service failed to consider adequately a scientific study supporting a reduced quarantine time for bison transfer from Yellowstone National Park to Montana tribes. (*Id*.) Cottonwood further moved to join two additional federal agencies, including the U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") and the U.S. Forest Service. (Doc. 16.)

The Court initially granted Cottonwood's motion to intervene and motion for joinder. (Doc. 27.) The Court later permitted the parties to file responsive briefing

2

on the motions. (Docs. 28 & 34.) The Court denied Cottonwood's motion to join APHIS and the U.S. Forest Service. (Doc. 74 at 12.) The Court further confirmed that Cottonwood may intervene in the matter at a "limited scope." (*Id*. at 8.)

The Court directed the parties to provide a proposed joint case management plan upon consolidation of the case with *Alliance for the Wild Rockies v. Hammond*, 1:25-cv-00012-BMM. The parties set a date of November 28, 2025, in the joint case management plan for Cottonwood to effectuate service of the crossclaim on Federal Defendants.  (Doc. 97 at 4.) The parties determined that Cottonwood needed to effectuate service pursuant to Fed. R. Civ. Pro. 4(i). (*Id*.)

Cottonwood filed for Submission of Proposed Summons to be served on Federal Defendants on November 13, 2025. (Doc. 96.) The Court requested clarification from Cottonwood on the Errata Summonses the next day. (Doc. 98.) Cottonwood informed the Court that it intended to serve Federal Defendants with its crossclaim. (Doc. 99.) Cottonwood has yet to deliver a copy of the summons and the pleading to the United States Attorney for the District of Montana. (Doc. 103 at 5.) Federal Defendants moved to dismiss Cottonwood's crossclaim for failure to effectuate service under Federal Rule of Civil Procedure 4 and for lack of standing under Federal Rule of Civil Procedure 12(b)(1). (Doc. 102.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12 allows a defendant to move for dismissal of claims for insufficient service of process. Fed. R. Civ. Pro. 12(b)(5). Courts generally disfavor dismissal for insufficient service of process. *Swisher v. State Farm Mut. Auto Ins. Co.*, 2021 U.S. Dist. Lexis 199222, at *2 (D. Mont. Oct. 15, 2021). Rule 12 further permits defendants to move for dismissal of a claim for lack of subject-matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1).

A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A party must demonstrate three elements to establish constitutional standing: (1) "injury in fact;" (2) "a causal connection between the injury and the conduct complained of;" and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A party must "clearly . . . allege facts demonstrating" each element at the pleading stage. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration in original).

**DISCUSSION**

Federal Defendants argue that Cottonwood failed to effectuate service of process under Rule 4. (Doc. 103 at 7.) Federal Defendants further argue that the

4

Court lacks subject matter jurisdiction to hear Cottonwood's claims as Cottonwood lacks standing to bring forth its crossclaim. (*Id*. at 8.)

## I.    Whether Cottonwood failed to effectuate service properly.

Cottonwood argues that it properly effectuated service of process on Federal Defendants. (Doc. 104 at 4.) Cottonwood disputes that Rule 4 governs service of process of pleadings brought by an intervening party under Rule 24. (*Id*.) Cottonwood contends that Rule 24 instead requires that service comply with Rule 5. (*Id*.) The Court agrees.

Rule 24 governs the rules and process of intervenors as intervenors parachute into an existing lawsuit by motion rather than being brought in by a new summons. Rule 24 does not explicitly require that an intervenor follow the requirements set forth in Rule 4. Rule 24 instead allows intervenors to serve process under the requirements of Rule 5. Fed. R. Civ. Pro. 24(c). Rule 5 permits an intervenor to serve the motion on existing parties to the lawsuit through a "court's electronic-filing system" by "sending it to a registered user." Fed. R. Civ. Pro. 5(b)(2)(E). Service proves ineffective "if the filer or sender learns that it did not reach the person to be served." *Id*.

Courts allow intervenors to serve process through motion rather than a summons. For instance, the court in *Elkins v. Bradshaw* rejected a defendant's argument that an intervenor must serve process of its claims through a summons under Rule 4 instead of a motion and pleading under Rules 24 and 5. 2025 U.S. Dist. LEXIS 20527 at *9 (M.D. La. Feb. 5, 2025). The court further recognized that a "possible caveat" arises where "an intervenor's complaint states a claim entirely independent of the original complaint and the intervenor's complaint could not have been properly served by the method used in serving the original complaint." *Id*. (quoting 7C Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1919 (3d ed. June 2024 Update)). Under such circumstances, the court emphasized that "it may well be" "stretching Rule 5 too far to allow service of the intervenor's complaint by any method other than that required under Rule 4 for original process." *Id*.; *see e.g. Tilley Lamp Co. v. Thacker*, 454 F.2d 805 (5th Cir. 1972).

The Fifth Circuit explained in *Tilley Lamp Co.* that intervention where a party "did not claim an interest in the property or transaction which was the subject matter of the primary action" but instead "desired to be substituted" for the original counterclaimant "so that it could assert its []cross-claim judgments against [] a

6

party [] whom it had never perfected service . . . . would plainly pervert the requirements of Rule 24." 454 F.2d at 808. Cottonwood's crossclaim does not stretch Rule 5 to such an improper degree.

Cottonwood properly effectuated service as an intervenor through the court's electronic-filing system by filing its motion to intervene and its accompanying answer. Fed. R. Civ. Pro. 5(b)(2)(E). Federal Defendants have been aware of Cottonwood's claims that National Park Service violated NEPA by failing to consider adequately a scientific study involving bison quarantine. *Id*. Cottonwood's crossclaim seems to offer an "independent" claim against Federal Defendants not included in Montana's complaint. *Elkins*, 2025 U.S. Dist. LEXIS 20527 at *9 (quoting 7C Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1919 (3d ed. June 2024 Update)). This "independent" claim falls within the scope of the controversy between the parties to satisfy the requirement of Rule 5. The Court declines to dismiss pursuant to Rule 12(b)(5) and 4.

## II.    Whether the Court lacks subject matter jurisdiction over the claims.

The Court next addresses whether Cottonwood sufficiently alleges standing for the Court to exercise subject matter jurisdiction over its counterclaim. Cottonwood relies on associational standing to establish that it suffers an injury in

fact. (Doc. 104 at 6.) An organization may establish injury in fact through its members by demonstrating associational standing. *Am. Diabetes Ass'n v. U.S. Dept. of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019). An organization must demonstrate the following criteria to establish associational standing: that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id*. (quoting *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)).

Federal Defendants argue that Cottonwood cannot demonstrate associational standing as its members lack standing to sue in their own right. (Doc. 106 at 6; *see also* Doc. 103 at 11.) Cottonwood seeks to enjoin National Park Service from quarantining bison for more than 300 days before transferring the bison to tribes. (Doc. 15 at ¶ 5.) Cottonwood filed three declarations to assert standing from its organization members who are also members of federally recognized tribes. (Docs. 51, 14-2, & 110.) Cottonwood suggests that each of these three declarants possess standing in their own rights as tribal members to challenge the quarantine time for bison before transfer to tribes. (Docs. 104 & 112.)

8

Cottonwood points to *United States v. Dion*, 476 U.S. 734 (1986), and

*United States v. Brown*, 777 F.3d 1025 (8th Cir. 2015), for support that tribal

members may individually assert reserved treaty hunting rights. (Doc. 112 at 1–2.)

*Dion* dealt with a tribal member defendant's challenge of his criminal conviction

for shooting four bald eagles on his tribal reservation. 476 U.S. at 735. The federal

government and the defendant "agree[d] that the treaty rights reserved by the

[defendant's Tribe] included the exclusive right to hunt and fish on their land." *Id*.

at 737. The U.S. Supreme Court explained that the defendant could assert "such

treaty rights" "as an individual member of the Tribe." *Id*. at 738 n.4 (citations

omitted).

The Eighth Circuit in *U.S. v. Brown* interpreted *Dion* to mean that "that an

individual Indian may assert usufructuary rights in a criminal prosecution." 777

F.3d at 1032. The federal government argued that individual tribal members lacked

the authority to assert reserved treaty rights to fish as the rights represent "'the

right of an individual of the community,' part of the 'tribal right to hunt or fish.'"

*Id*. (quoting *United States v. Fox*, 573 F.3d 1050, 1053–54 (10th Cir. 2009)).  The

Eighth Circuit rejected this argument. *Id*. The Eighth Circuit concluded rather that

"it is well settled" that tribal member defendants may assert their tribal reserved

9

treaty rights as an affirmative defense in a criminal prosecution involving the exercise of their reserved rights to hunt and fish. *Id*.

Courts view treaties between the United States and tribes as "essentially a contract between two sovereign nations." *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675 (1979). Tribal treaty reserved hunting, fishing, and gathering rights are rights held in common for tribal members by the treaty tribes themselves. *See United States v. Washington*, 520 F.2d 676, 688 (9th Cir. 1975). The Ninth Circuit similarly concluded that "[t]he right to fish at usual and accustomed grounds" constituted a "communal property right pertaining to the tribe." *Id*. Individual tribal members may exercise treaty reserved rights to hunt but tribal members remain subject to their own tribe's hunting authorization and regulation. *See id*. at 686 (recognizing that tribes retain the right to self-regulate their own members "free of state controls" when fishing off the reservation upon responsible resource management).

A tribe's right to regulate its own members aligns with long standing precedent demonstrating that individual tribal members may assert tribal reserved hunting rights as an affirmative defense against states attempting to criminally prosecute tribal reserved hunting. *See Herrera v. Wyoming*, 587 U.S. 329 (2019);

10

*Sohappy v. Smith*, 529 F.2d 570 (9th Cir. 1976). Cottonwood attempts to assert standing to challenge Federal Defendants' NEPA analysis of the IBMP under the guise of protecting tribal treaty rights to hunt bison. Several tribes have intervened in this matter to uphold the IBMP based upon the same tribal treaty reserved rights to hunt bison in Yellowstone National Park. (Docs. 25, & 63.) Cottonwood seeks to demonstrate standing to assert its crossclaim against Federal Defendants through its members who also hold tribal member status. (Docs. 51, 14-2, & 110.)

The Court questions whether these Cottonwood members possess standing in their own right to sue, especially where their own tribes have yet to intervene in this action. *Am. Diabetes Ass'n*, 938 F.3d at 1155. The United States entered treaties with Tribes as equal sovereigns and not with "individual Indians." *Blackfeather v. United States*, 190 U.S. 368, 377 (1903). Tribes typically represent the proper parties to assert such treaty claims against Federal Defendants as the tribes themselves hold these treaty rights in common for the benefit of their people. *United States v. Washington*, 520 F.2d at 688. Individual tribal members may assert treaty reserved hunting rights claims against parties as affirmative defenses in criminal prosecutions. *See Dion*, 476 U.S. at 738; *see also Brown*, 777 F.3d at 1032; *Herrera*, 587 U.S. 329 (2019); *Sohappy*, 529 F.2d 570 (9th Cir. 1976).

11

Even if Cottonwood could point to an injury in fact, the Court also questions whether it could redress Cottonwood's concerns about the time captured bison remain in quarantine before being transferred to tribes. National Park Service has no authority over bison quarantine protocols. APHIS maintains authority over bison quarantine in Yellowstone National Park. *See* U.S. Dep't of Interior, Nat'l Park Service, Yellowstone National Park Bison Mgmt. Plan Final Env't Impact Statement, at 43 (2024). The Court declined to join APHIS as a party to the suit. (Doc. 74.) A court cannot redress a party's NEPA claim against an agency where the rule from another agency controls the challenged action. *See Nuclear Info. & Res. Serv. v. NRC*, 457 F.3d 941, 955 (9th Cir. 2006). Cottonwood fails to demonstrate redressability. *Lujan*, 504 U.S. at 560–61.

The Court lacks subject matter jurisdiction to hear Cottonwood's crossclaim as Cottonwood lacks standing to assert its crossclaim against Federal Defendants. Fed. R. Civ. Pro. 12(b)(1).

## ORDER

Accordingly it is **HEREBY ORDERED**, that the Court denies, in part, and grants, in part, Federal Defendants' motion to dismiss. (Doc. 102.) The Court dismisses Cottonwood's crossclaim without prejudice for lack of subject matter

12

jurisdiction. Fed. R. Civ. Pro. 12(b)(1). The Court would entertain a motion to reconsider its decision on standing, particularly on whether individual tribal members may assert reserved tribal treaty rights outside criminal prosecutions. Parties must file any motion for reconsideration within 14 days from the filing of this Order. The Court further welcomes a response from the several tribal intervenor defendants who possess expertise on this subject, including Fort Peck Assiniboine and Sioux Tribes, Confederated Salish and Kootenai Tribes of the Flathead Reservation, Confederated Tribes of the Umatilla Indian Reservation, and the Confederated Tribes and Bands of the Yakama Nation.

**DATED** this 1st day of April, 2026.

_____
Brian Morris, Chief District Judge
United States District Court